UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELAINE SYSTERMANN,

                Plaintiff,         Civil Action No. 12-15575
                                      Honorable Nancy G. Edmunds
                                      Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [16, 20]

      Plaintiff Elaine Systermann ("Systermann") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [16, 20], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.    RECOMMENDATION**

      For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Systermann is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [20] be GRANTED, Systermann's Motion for Summary Judgment [16] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

**II.     REPORT**

   **A.     Procedural History**

On March 2, 2010, Systermann filed an application for SSI, alleging a disability onset date of August 30, 2008. (Tr. 68-70). This application was denied initially on June 10, 2010. (Tr. 40-43). Systermann filed a timely request for an administrative hearing, which was held on June 9, 2011, before ALJ Myriam Fernandez Rice. (Tr. 358-80). Systermann, who was represented by attorney Samantha Ball, testified at the hearing, as did vocational expert Jennifer Turecki. (*Id.*). On July 20, 2011, the ALJ issued a written decision finding that Systermann is not disabled. (Tr. 17-26). On October 15, 2012, the Appeals Council denied review. (Tr. 6-9). Systermann filed for judicial review of the final decision on December 19, 2012. (Doc. #1).

   **B.     Background**

      *1.     Disability Reports*

In an undated disability report, Systermann indicated that her ability to work is limited by "back complications," ovarian cancer, carpal tunnel, and "ankle." (Tr. 80). According to Systermann, her conditions became severe enough to prevent her from working on March 5, 1993, and she has not worked since that time. (Tr. 81). Systermann completed high school but had no further education. (*Id.*). At the time of the report, she was taking several medications, including Lorcet (for pain), Soma (a muscle relaxer), and Vitamin D, and using a Lidoderm patch (for pain). (Tr. 84).

In a function report dated April 2, 2010, Systermann reported that she lives in a mobile home with her husband. (Tr. 94). When asked to describe her daily activities, Systermann indicated that she makes coffee, showers, watches television, goes "uptown" to get the mail, talks on the telephone, goes grocery shopping, and (sometimes) goes out to lunch with a friend. (Tr. 95). With the help of her daughter and son-in-law, she cares for her disabled husband and

dog. (*Id.*). When asked what she could do before the onset of her conditions that she can no longer do, Systermann listed running, bowling, planting flowers, and playing bingo. (*Id.*). Her conditions affect her sleep, and performing personal care tasks such as getting dressed, bathing, and caring for her hair require her to "take breaks" because she gets tired. (*Id.*). She is able to prepare meals on a daily basis, do laundry, wash dishes and dust. (Tr. 96). In addition, she is able to go grocery shopping, although she typically has help and must make two or three trips to get everything she needs. (*Id.*). Systermann reported that she goes outside once or twice a day, is able to drive, and can pay bills and handle a checking and savings account. (Tr. 97). Her hobbies include watching television and talking on the telephone. (Tr. 98).

When asked to identify functions impacted by her condition, Systermann checked lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, hearing, stair climbing, memory, completing tasks, and using her hands. (Tr. 99). She indicated that she can walk for approximately twenty minutes before she needs to rest. (*Id.*).

        2.    *Systermann's Testimony*

At the time of the June 9, 2011 hearing before the ALJ, Systermann was 51 years old and lived in a mobile home with her disabled husband. (Tr. 361, 371-72, 376). She was able to prepare meals, do some cleaning and grocery shopping, drive, and do laundry. (Tr. 372-73, 376).

Systermann testified that, in 1988, she injured her back while working as a school janitor, and she has not worked at all since March 1993. (Tr. 361-62). In addition, she experienced complications from gastric bypass surgery and has a hernia in her stomach area. (Tr. 363). She received Social Security disability benefits for some period of time, primarily because she was undergoing treatment for ovarian cancer, but those benefits were discontinued in approximately 2009. (Tr. 362-63).

Systermann testified that she suffers from sharp low back and hip pain that results in numbness in both legs, which is aggravated by sitting, standing, and walking. (Tr. 363). She also experiences neck pain, which radiates down her left shoulder and arm. (Tr. 366). Systermann testified that her back pain is a 7/10 on the pain scale, while her neck pain is a 6 or 7/10. (Tr. 365). She can sit for 15-20 minutes at a time, stand for 20-25 minutes at a time, walk for 20-25 minutes, and carry approximately five pounds. (Tr. 369-70). She takes medication for pain, uses both ice and a heating pad, and wears a pain patch. (Tr. 364). Systermann also has received epidural injections in her back and neck, which provide some relief. (Tr. 364-65).

Systermann testified that she previously had surgeries on her left ankle; it continues to swell, and she has difficulty going up and down stairs. (Tr. 366-67). In order to reduce the swelling, she tries to elevate her foot several times a day for 20-25 minutes at a time. (Tr. 367). Occasionally, she uses a cane, but it was not prescribed by a doctor. (Tr. 376). She testified that she suffers from fatigue and weakness as well, and needs to take two or three naps per day. (Tr. 370). Systermann further testified that some days she feels so tired that she stays in bed or on the couch all day. (Tr. 371). In addition, she has carpal tunnel syndrome, which makes it difficult for her to write or open jars and bottles. (Tr. 374).

      3.     *Medical Evidence*

          a.     *Back and Neck Pain*

Between 2008 and 2011, Systermann sought treatment from her primary care physician, Dr. Curtis Craig, for chronic neck and back pain, as well as high cholesterol, history of ovarian cancer, anemia, and vitamin D deficiency.

In 2008, Systermann complained to Dr. Craig of neck and low back pain. (Tr. 307-09). MRIs of Systermann's lumbar spine performed in April 2006 and April 2008 revealed evidence of disc bulging with only mild joint osteoarthritis (facet arthrosis) and a small central protrusion

4

at L5-S1. (Tr. 131, 345). MRIs of her cervical spine performed in October 2006 and May 2008 showed a normal cervical cord with no central canal stenosis and only a minimally compressed disc bulge at C5-C6. (Tr. 132, 344). Dr. Craig's treatment notes consistently listed Systermann's spine and extremities as "intact," with no neurological deficits, no edema, and normal peripheral pulses. (Tr. 157-72). Systermann was treated with narcotic pain medication, muscle relaxers, and epidural injections that provided some relief. (Tr. 22, 295). In April and May 2009, Dr. Craig noted that there was no evidence of active disease, neuropathy, motor radiculopathy, or motor weakness. (Tr. 158, 160). An MRI of Systermann's lumbar spine performed on June 16, 2009, was unchanged from previous studies and continued to reveal "evidence of bulging on a broad basis at L4-5, with mild facet arthrosis and a small central protrusion at L5-S1." (Tr. 342-43).

Between 2008 and 2010, Systermann also treated with a pain specialist, Dr. Kuldip Deogun, at the Chronic Pain Institute. During that period of time, Systermann received multiple steroid injections in her cervical and lumbar spine. (Tr. 153-56, 244, 247-49, 252, 255, 260-62). In February and March 2010, Systermann received two cervical injections and a lumbar injection. (Tr. 198-99, 204). During a follow-up visit in April 2010, Systermann reported that her headaches were completely resolved, her range of motion without pain increased, and she had greater than 50% relief from pain. (Tr. 201). She received another lumbar injection in May 2010 and two cervical injections in July 2010. (Tr. 205, 208-09). In August 2010, Systermann reported that she no longer had "shooting pain" from her neck, and her doctor noted that she had greater than 50% relief from pain. (Tr. 212-212A). In November 2010, she reported to Dr. Craig that her back was "getting better," and she indicated she did not need an injection. (Tr. 273). A September 2010 MRI of Systermann's cervical spine did not reveal evidence of a

herniated disc, stenosis, or cord compression. (Tr. 339-40). Likewise, a September 2010 MRI of Systermann's lumbar spine indicated only mild disc bulging at L4-L5 and L5-S1, but no herniated discs or spinal canal stenosis. (*Id.*).

Systermann underwent a consultative physical examination with Dr. Scott Lazzara on May 10, 2010. (Tr. 145-52). She reported a history of chronic degenerative arthritis, carpal tunnel release, left ankle injury, a recent hospitalization due to colonic bleeding, and a history of ovarian cancer. (Tr. 145). She further reported that she was able to perform activities of daily living, including driving, household chores, cooking (for short periods of time), watching television, and talking on the telephone. (*Id.*). On examination, Dr. Lazzara noted that there was no evidence of vascular deficits or edema present in the lower extremities, and peripheral pulses were intact. (Tr. 146). There was no evidence of sensory loss or dexterity impairment, and her grip strength remained intact. (*Id.*). She could pick up a coin, button clothing, and open a door. (*Id.*). She had no difficulty getting on and off the examination table, mild difficulty heel and toe walking, moderate difficulty squatting, and was unable to hop. (*Id.*). Range of motion studies were within normal ranges except for a slight decrease in dorsiflexion of the left ankle. (Tr. 147-48). There was no evidence of radicular symptoms, weakness, sensory deficits, or atrophy. (Tr. 149). Systermann walked with a normal gait without the use of an assistive device. (*Id.*). An x-ray of the cervical spine was normal except for a slight reverse of the normal cervical lordosis. (Tr. 150). Dr. Lazzara concluded that Systermann's arthritis was "relatively stable" and that she could occasionally stoop and carry, push, and pull up to 20 pounds. (Tr. 149, 151).

On November 5, 2010, Systermann was examined by Dr. Daniel Elskens, a neurologist. (Tr. 336-38). At that visit, Systermann complained of pain in her neck, both shoulders, left arm, lower back, hips, legs, and feet. (Tr. 336). On examination, Dr. Elskens noted that Systermann

6

was not in acute distress and had full, painless range of motion of the neck and thoracic and lumbar spine. (Tr. 337). She had normal stability, strength, and tone; her gait was intact; and her reflexes were normal and symmetrical. (*Id.*). Dr. Elskens concluded that Systermann's cervical and lumbar spine MRIs provided objective evidence of degenerative disease without significant encroachment, but failed to explain her symptoms. (*Id.*). He ordered electrodiagnostic studies of the left upper extremity and right lower extremity (Tr. 338), but results of these studies are not in the record.

On April 25, 2011, Systermann returned to Dr. Deogun at the Chronic Pain Institute (having not seen him since August 2010). (Tr. 224). She complained of increased pain in her neck and left shoulder and, in May 2011, received epidural steroid injections. (Tr. 222-23).

### b. *Other Physical Impairments*

On September 15, 2009, Dr. Jeffrey Gorosh examined Systermann's right wrist, noting that she complained of pain on the thumb side of her wrist but denied any numbness or tingling in her hand. (Tr. 137). The physical examination was positive for tenderness to palpation over the tendons of the first and second extensor compartment, and Systermann was diagnosed with De Quervain's tenosynovitis, which is inflammation of the tendons on the thumb side of the wrist caused by repetitive hand or wrist movement. (*Id.*). Systermann was prescribed pain medication, Voltaren gel, and a radial gutter thumb spica splint. (*Id.*). No further complaints of right wrist pain or treatment appear in the record.

On January 5, 2010, Systermann was admitted to the hospital for anemia and a low hemoglobin count. (Tr. 325-27). She complained of feeling fatigued "for a long time," and she was administered four units of packed red blood cells. (Tr. 328-29). Physical examination revealed a normal range of motion of the neck, back, and extremities, and no evidence of edema

or tenderness. (Tr. 332). A colonoscopy was performed, which revealed a bleeding arteriovenous malformation that was cauterized. (Tr. 329). Systermann had no further evidence of bleeding, and her hemoglobin was stable at the time of discharge on January 8, 2010. (Tr. 325-26). It appears that Systermann's anemia was resolved by February 2010. (Tr. 194).

On September 7, 2010, Systermann was examined by Dr. Cory Zieger for complaints of left ankle pain. (Tr. 348-49). Systermann reported having had two ankle surgeries for "instability" back in 1993, and indicated that she reinjured the ankle in 2010 when a shopping cart hit her heel. (Tr. 348). On examination, Systermann had mild pain with ankle motion and decreased sensation over the superficial peroneal nerve distribution. (*Id.*). X-rays of the left ankle showed mild degenerative changes about the ankle joint, and she was diagnosed with osteoarthritis of the left ankle. (*Id.*). She received a cortisone injection and was prescribed an ankle brace for support and physical therapy. (Tr. 349-51).

    *4. Vocational Expert's Testimony*

Jennifer Turecki testified as an independent vocational expert ("VE") at the administrative hearing before the ALJ. (Tr. 377-80). First, the VE testified that Systermann had no past relevant work. (Tr. 378). Then, the ALJ asked the VE to imagine a claimant of Systermann's age, education, and work experience, who could perform light work, with the following additional limitations: lifting 10-15 pounds occasionally and 5 pounds frequently; occasional operation of foot controls on the left; occasional balancing, stooping, crouching, kneeling, crawling, and climbing ramps and stairs; no climbing ropes, ladders, or scaffolds; no constant rotation, flexion, or extension of the neck; no constant overhead reaching or handling of objects (gross manipulation); and no concentrated exposure to excessive vibration. (Tr. 378). The VE testified that the hypothetical individual would be capable of working as an inspector

8

(3,000 jobs in southeastern Michigan) or a sorter (4,000 jobs).  (Tr. 379).

### C. Framework for Disability Determinations

Under the Act, SSI is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" in relevant part as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps ….  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers

9

to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Systermann is not disabled under the Act. At Step One, the ALJ found that Systermann has not engaged in substantial gainful activity since March 2, 2010, the application date. (Tr. 19). At Step Two, the ALJ found that Systermann has the severe impairments of discogenic and degenerative disc disease at L4-L5, left ankle osteoarthritis, carpal tunnel syndrome, status post ovarian cancer, and hernia pain (status post hernia operation). (*Id.*). At Step Three, the ALJ found that Systermann's impairments do not meet or medically equal a listed impairment. (Tr. 19-20).

The ALJ then assessed Systermann's residual functional capacity ("RFC"), concluding that she is capable of performing light work, with the following additional limitations: lifting 10-15 pounds occasionally and 5 pounds frequently; occasional operation of foot controls on the left; occasional balancing, stooping, crouching, kneeling, crawling, and climbing ramps and stairs; no climbing ropes, ladders, or scaffolds; no constant rotation, flexion, or extension of the neck; no constant overhead reaching or handling of objects (gross manipulation); and no concentrated exposure to excessive vibration. (Tr. 20-25).

At Step Four, the ALJ determined that Systermann has no past relevant work. (Tr. 25). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Systermann is capable of performing a significant number of jobs that exist in the national economy. (Tr. 25-26). As a result, the ALJ concluded that Systermann is not disabled under the Act. (Tr. 26).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative

10

decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v.*

*Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F.     Analysis**

Systermann argues that, in concluding she was capable of performing a significant number of jobs that exist in the national economy, the ALJ failed to adequately assess the credibility of her subjective complaints and to properly evaluate all of the medical evidence submitted. As a result, Systermann argues, the ALJ failed to pose a hypothetical question to the VE that adequately took into account all of her limitations. A review of the record and the ALJ's decision, however, makes clear that the ALJ committed no error warranting remand.

*1.     The ALJ's Credibility Determination is Supported by Substantial Evidence*

As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, she

must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of her pain are credible. *Soc. Sec. Rul.* 96-7, 1996 WL 374186, *1 (July 2, 1996); *see also* 20 C.F.R. §416.929.

In this case, after finding at Step Two that Systermann has the severe impairments of discogenic and degenerative disc disease at L4-L5, left ankle osteoarthritis, carpal tunnel syndrome, status post ovarian cancer, and hernia pain (status post hernia operation) (Tr. 19), the ALJ concluded that Systermann has the residual functional capacity to perform a significant number of light jobs that exist in the national economy. (Tr. 20-25). In reaching this conclusion, the ALJ specifically referenced Systermann's testimony that she suffers from back, neck, shoulder, and leg pain; cannot lift more than five pounds continuously; can sit for only 15-20 minutes; can stand and/or walk for only 20-25 minutes; needs to elevate her foot every two hours; and takes two or three naps a day. (Tr. 21). However, the ALJ found that while Systermann's conditions could reasonably be expected to produce the alleged symptoms, her statements about the intensity, persistence and limiting effects of those symptoms were not entirely credible to the extent they conflicted with the RFC assessment. (Tr. 24-25). In reaching this conclusion, the ALJ specifically considered Systermann's activities of daily living and the objective medical evidence, as well as observations made at the hearing, and she gave good reasons for discrediting Systermann's allegations of work-preclusive limitations. (Tr. 20-25).

In evaluating Systermann's credibility, the ALJ first considered the objective medical evidence. Objective evidence – such as x-rays, MRI results, and examination findings – is a "useful indicator" for an ALJ to use when evaluating the credibility of a claimant's symptoms.

*See* 20 C.F.R. §416.929(c)(2) ("Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."). As set forth below, the ALJ thoroughly explained that the objective medical evidence in the record failed to support Systermann's claims.

As an initial matter, MRIs of Systermann's lumbar spine performed in April 2006, April 2008, and June 2009 revealed evidence of disc bulging with only mild joint osteoarthritis (facet arthrosis) and a small central protrusion at L5-S1. (Tr. 21-22, 131, 342-43, 345). MRIs of her cervical spine performed in October 2006 and May 2008 showed a normal cervical cord with no central canal stenosis and only a minimally compressed disc bulge at C5-C6. (Tr. 21-22, 132, 344). The ALJ also noted that an MRI of Systermann's cervical spine performed in September 2010 did not reveal evidence of a herniated disc, stenosis, or cord compression. (Tr. 24, 339-40). Similarly, the ALJ noted that a September 2010 MRI of Systermann's lumbar spine indicated only mild disc bulging at L4-L5 and L5-S1, but no herniated discs or spinal canal stenosis. (*Id.*).

In support of her claims of disabling pain, Systermann cites to treatment notes from her November 5, 2010 visit to Dr. Elskens. (Doc. #16 at 10). Specifically, Systermann alleges that Dr. Elskens' notes indicate that she experiences pain that is "knifelike, numbing, sharp, shooting, throbbing. The severity is excruciating. The pain radiates into both hips, both posterior legs, calf, foot, the toes. Associated symptoms include weakness diffusely in both legs, numbness and tingling in the thigh, spasms, decreased range of motion in the lumbar spine." (*Id.* (citing Tr. 336)). These complaints, however, are not objective evidence; they are Systermann's own subjective reports. The ALJ considered these complaints, but then noted Dr. Elskens' findings that Systermann had full and painless range of motion of the neck and thoracic and lumbar spine.

14

(Tr. 24, 337). She pointed out Dr. Elskens' conclusion that although Systermann's MRIs showed evidence of degenerative disease, the objective findings failed to explain her symptoms. (*Id.*). The ALJ also noted that Dr. Elskens ordered further electrodiagnostic studies, but there was no indication that Systermann followed up with these tests. (Tr. 24, 338). Thus, the ALJ reasonably concluded that Dr. Elskens' findings undermined Systermann's allegations. (Tr. 24).

The ALJ also gave significant weight to the consultative physical examination performed by Dr. Scott Lazzara on May 10, 2010. (Tr. 23, 145-52). The ALJ noted that, on examination, Dr. Lazzara found no evidence of sensory loss or dexterity impairment, radicular symptoms, weakness, sensory deficits, or atrophy. (Tr. 23, 146, 149-50). The ALJ cited Dr. Lazzara's conclusion that Systermann's arthritis was "relatively stable," and that she could occasionally stoop and carry, push, and pull up to 20 pounds. (Tr. 23, 149, 151). The ALJ reasonably concluded that Dr. Lazzara's findings were consistent with those of Dr. Elskens, and that both doctors' conclusions contradicted Systermann's claims of disability.

The ALJ also noted that the record did not contain objective findings to support Systermann's allegations concerning her left ankle. Specifically, the ALJ noted that, after examining Systermann's x-rays, Dr. Zieger found only mild degenerative changes and diagnosed her with osteoarthritis. (Tr. 24, 348). The mere diagnosis of osteoarthritis, however, says nothing about the severity of a claimant's symptoms. *See, e.g., Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). And, although Systermann testified that she needed to elevate her foot several times a day for 20-25 minutes at a time (Tr. 367), the ALJ correctly pointed out that there is no evidence Dr. Zieger (or any other physician) instructed her to do so. (Tr. 24).

In her motion, Systermann argues that the ALJ overlooked "her continuous search to find relief for her chronic pain." (Doc. #16 at 10). This is simply not the case. The ALJ

15

acknowledged that Systermann used heating pads, thermal wraps, ice, pain medication, muscle relaxers, patches, and epidural injections for pain relief. (Tr. 21). However, Systermann is not disabled simply because she received treatment for pain; rather, this is merely one factor to be considered in evaluating the intensity and persistence of her symptoms. *See* 20 C.F.R. §416.929(c)(3). Moreover, the ALJ noted that although Systermann was prescribed an ankle brace and instructed to undergo physical therapy, there is no evidence that she adhered to either recommendation. (Tr. 23-24).

In evaluating Systermann's credibility, the ALJ also considered whether Systermann's activities of daily living were consistent with her allegations of disabling pain. Specifically, the ALJ noted that Systermann prepares meals, does some light housecleaning, washes dishes, does laundry, and grocery shops. (Tr. 24, 95-96, 372-76). The ALJ also considered the fact that Systermann cares for her disabled husband and dog, can generally attend to her own personal care needs without assistance, and can handle her own financial matters. (Tr. 21, 95-97). It was appropriate for the ALJ to consider these facts in assessing Systermann's credibility. *See Walters*, 127 F.3d at 532 (an ALJ may consider household and social activities in evaluating the claimant's assertion of pain).

Lastly, the ALJ noted that she carefully observed Systermann at the administrative hearing, and Systermann "was not in any obvious pain or discomfort when walking in or out of the hearing room or while sitting during the course of the hearing." (Tr. 25). The ALJ felt that this was inconsistent with Systermann's assertions that she had difficulty sitting, standing, and walking. (*Id.*). Where the ALJ had the opportunity to observe Systermann at the hearing, she was in the best position to assess the credibility of her statements in this regard. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

In sum, the ALJ recognized the duty imposed upon her by the regulations and, in addition to Systermann's own subjective complaints, she considered Systermann's daily activities, the objective medical evidence, and observations made at the administrative hearing. Thus, the ALJ's credibility determination is supported by substantial evidence and should not be disturbed.

   2.   *The ALJ's RFC Determination is Supported by Substantial Evidence*

Systermann also appears to vaguely challenge the ALJ's conclusion that she retains the RFC to perform a reduced range of light work. (Doc. #16 at 11-13). As set forth above, the ALJ concluded that Systermann is capable of performing light work, with the following additional limitations: lifting 10-15 pounds occasionally and 5 pounds frequently; occasional operation of foot controls on the left; occasional balancing, stooping, crouching, kneeling, crawling, and climbing ramps and stairs; no climbing ropes, ladders, or scaffolds; no constant rotation, flexion, or extension of the neck; no constant overhead reaching or handling of objects (gross manipulation); and no concentrated exposure to excessive vibration. (Tr. 20-25).

This conclusion is supported by the various pieces of evidence discussed above, but in particular by the objective medical evidence, including: (1) the April 2006, April 2008, and June 2009 MRIs of Systermann's lumbar spine, which revealed evidence of disc bulging with only mild joint osteoarthritis (facet arthrosis) and a small central protrusion at L5-S1 (Tr. 131, 342-43, 345); (2) the October 2006 and May 2008 MRIs of Systermann's cervical spine, which showed a normal cervical cord with no central canal stenosis and only a minimally compressed disc bulge at C5-C6 (Tr. 132, 344); (3) the September 2010 MRI of Systermann's lumbar spine, which indicated only mild disc bulging at L4-L5 and L5-S1 but no herniated discs or central canal stenosis (Tr. 339-40); (4) the September 2010 MRI of Systermann's cervical spine, which did not reveal evidence of a herniated disc, stenosis, or cord compression (*Id.*); and (5) the fact that, in

November 2010, Systermann's neurologist concluded that while her x-rays showed evidence of some degenerative disc disease, the objective findings – including full and painless range of motion of the cervical, thoracic, and lumbar spines – simply did not support her alleged symptoms (Tr. 337). In addition, despite the fact that the record did not contain any complaints of hernia pain, the ALJ reasonably considered the fact that Systermann had undergone a hernia repair by incorporating into her RFC finding additional lifting limitations. (Tr. 25). In summary, the ALJ's RFC finding is supported by substantial medical and other evidence in the record.

### 3. *The ALJ's Hypothetical Questions to the VE were Proper*

Finally, Systermann argues that the ALJ's hypothetical questions to the VE were insufficient because they did not account for all of her limitations. (Doc. #16 at 11-13). An ALJ may rely on the testimony of a VE to determine whether jobs would be available for an individual who has workplace restrictions. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). However, in order for a VE's testimony in response to a hypothetical question to serve as substantial evidence in support of a conclusion that the claimant can perform other work, the question must accurately portray the claimant's physical and mental impairments. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010).

In this case, Systermann argues that the ALJ did not incorporate into the hypothetical question she posed to the VE the fact that (1) she needs to lie down and rest several times during the day, and (2) she needs to elevate her leg at waist level several times a day. (Doc. #16 at 12). Nowhere in the medical evidence, however, does any doctor impose such restrictions. Indeed, the ALJ specifically noted that Dr. Zieger, who examined Systermann's ankle, did not mention any evidence of ankle swelling or instruct Systermann to elevate the leg waist high. (Tr 24, 348-51). And, although Systermann did complain – in January 2010, when she was admitted to the

hospital for anemia and low hemoglobin – that she had been feeling fatigued "for a long time" (Tr. 328), she was discharged three days later, and her symptoms appear to have been resolved by February 2010 (Tr. 194). Thus, the ALJ reasonably found Systermann's testimony that she needs both to lie down and to elevate her leg during the day less than fully credible. Because the RFC assessment that Systermann could perform light work with certain restrictions is supported by the substantial evidence discussed above, and because the ALJ's hypothetical to the VE matched that RFC almost verbatim, (*Cf.* Tr. 20 with Tr. 378), the ALJ properly relied on the VE's testimony that Systermann, even with those restrictions, could perform a significant number of jobs.

For all of the foregoing reasons, the Court finds that the ALJ's decision that Systermann is not disabled is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [20] be GRANTED, Systermann's Motion for Summary Judgment [16] be DENIED, and the ALJ's decision be AFFIRMED.


Dated: November 20, 2013                s/David R. Grand
Ann Arbor, Michigan                     DAVID R. GRAND
                                        United States Magistrate Judge


### NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140

19

(1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 20, 2013.

s/Felicia M. Moses  
FELICIA M. MOSES  
Case Manager